### Texas & Pacific Railway Company v. C. M. Adams.

Decided January 17, 1903.

**1.—Carrier of Passenger—Injury on Freight Train—Charge.**

In an action by a passenger for injuries sustained while riding in a freight car, a charge that plaintiff assumed the risks incident to such pushing and jerking of cars as was necessary and proper in the handling of the car, was not erroneous in the use of the word "necessary," and because of a refusal to charge that plaintiff could not recover if the car was handled in the usual and proper manner.

**2.—Same—Evidence and Charge.**

Where plaintiff testified that the car containing himself and his furniture was kicked back onto a track where it struck some other cars in a train that was being made up, this was sufficient, in the absence of evidence to the contrary, to warrant the charge in assuming that the car was then being moved for the purpose of incorporating it in a train.

**3.—Same—Same—Negligence.**

It was not error to refuse to charge that if plaintiff remained in the car while it was sidetracked in the yards at a junction point where the injury occurred, his act in doing so was negligence, where the only testimony relative to his remaining in the car was that of plaintiff to the effect that he so remained in it because he did not know when the car would continue the journey.

**4.—Same—Negligence Per Se—Standing Up in Car.**

That plaintiff was standing up in the car at the time of the jerk and injury did not constitute negligence per se, there being no evidence as to how he came to be on his feet at that instant.

Appeal from the District Court of Grayson. Tried below before Hon. Rice Maxey.

*T. J. Freeman* and *Head & Dillard,* for appellant.

*Randell, Wood & Hassell,* for appellee.

TEMPLETON, Associate Justice.—C. M. Adams shipped his household furniture and his horse and cow from Timpson to Sherman. The property was transported in a car chartered by him from the Texas & Sabine Valley Railway Company. The car was billed over the line of said company from Timpson to Longview, and from that point, through Texarkana Junction, to its destination over the line of the Texas & Pacific Railway Company. Adams, together with his minor son, accompanied the car, riding therein under and by virtue of his contract with the railway companies. The car was incorporated in a freight train and carried to Texarkana Junction, as contracted. From thence it was carried east about five miles to the city of Texarkana, and then back through the junction to Sherman. The car arrived at Texarkana about 6 o'clock in the morning and was set out in the railroad yards, where it remained until about noon. Adams and his son did not leave the car during the time it was at Texarkana. While the car was in the yards it was switched from the track where it was originally placed onto another track. It was kicked into its new position against a lot of other cars with such violence as to throw Adams, who was standing up at the time, against a box and injure him. He brought suit on account of the injury so received, and, on a jury trial, obtained a judgment from which the company has prosecuted an appeal.

The last clause of that paragraph of the charge of the court wherein the defenses of the company were submitted to the jury, reads as follows: "You are further instructed that in taking passage in said car to be transported therein, the plaintiff assumed the risks and danger incident to whatever jerking and pushing of said car against other cars that was necessary and proper to be done in the handling and transportation of said car; so, if you should believe from the evidence that plaintiff was injured, but you further believe from the evidence that such injuries resulted from such jerking or pushing said car against other cars as was necessary and proper in order to couple same onto other cars when making up the train with which said car was to be transported, then you will find for the defendant." In its first assignment of error appellant complains of that part of said clause of the charge where the law is applied to the facts, and in the same connection complains of the action of the trial court in refusing to give a special charge which reads thus: "Plaintiff assumed all such risks as were attendant upon the proper and necessary handling of the freight car in the yards at Texarkana, and if this car was handled in the usual and proper manner, then you will return a verdict for the defendant, even if you believe plaintiff was injured in the handling of said car."

The proposition presented under this assignment is that the use of the word "necessary" in the charge complained of was improper, all that was required to release defendant being that the car was handled in the usual and proper way. In our opinion the charge given cor-

32 Civil—8.

rectly expressed the law upon the issue therein presented. If the car was unnecessarily and needlessly switched about the yards, the fact that the doing so may have been the "usual" way of handling such cars would not excuse the company. That the employes of the company were bound to handle the car properly is conceded, and it can not be said that they did so, if it was moved without any necessity for such action.

Further complaint is made of that part of the charge above considered in the second assignment of error. It is insisted that the court erred in assuming in said charge that the car was being incorporated into a train, and requiring of the company the use of such care as was necessary and proper in coupling the same on to other cars in making up a train in which said car was to be transported, for the reason that there was no evidence that the car was being handled for the purpose of coupling it onto other cars in doing what is known as making up a train. The plaintiff testified that the car "was kicked back on this track and went back with considerable force. It went back and struck some other cars in a train which was being made." The plaintiff was not further examined on this point, and there was no other evidence offered bearing on this question. The witnesses for the company, who were its employes in the yards at Texarkana and who are no doubt the men who handled the car, did not remember the occurrence. In this state of the record we are of the opinion that it should be held that appellant's contention is not well taken. It is a reasonable, if not a conclusive inference from the plaintiff's testimony that the car was being moved for the purpose of incorporating it into a train. The point does not seem to have been regarded by the parties at the time of the trial as of any consequence, and we think it was not. It makes no difference whether the car, at the time of the accident, was being placed in position in a train, as the company, in any case, was bound to use ordinary care in handling it, which was the measure of care laid down in the charge. We believe what is said above is sufficient to dispose of all the objections to said charge, including the contention that the same was upon the weight of the evidence.

In its third assignment of error appellant complains of the action of the trial court in refusing to give a special charge which reads thus: "If you believe from the evidence that plaintiff remained in the car when it was put in the yards at Texarkana, and was there on the side tracks, and that his so remaining was negligence, and that because of such negligence the accident and his injury, if any there were, were brought about or proximately contributed to, then you will return a verdict for defendant." The answer to this complaint is that the evidence does not raise the issue of negligence on the part of plaintiff based on the fact that he remained in the car while it was in the yards at Texarkana. The only evidence on this point was that of plaintiff himself, who testified as follows: "I arrived at Texarkana, if it was Tex-

arkana to which I went, about 6 o'clock in the morning, and stayed there, I presume, until 12 o'clock. My car was left on the farthest track from the depot until about 9:30 o'clock. Then it was switched to another track. * * * I knew when I was in Texarkana, but did not know that it was Texarkana. I had never stopped there. I did not leave the car. I was afraid to do so, as I had no notice when we would leave town. I did not know how big Transcontinental (Texarkana) Junction was, and really supposed that Texarkana was Transcontinental Junction, as I was billed through that point. I was hurt about 9:30 o'clock. * * * While I was at Texarkana I did not leave the car and go up town. I remained in the car all the time. I was in the railroad yards. * * * Yes, when I was in Texarkana I knew that I was in the railroad yards. I saw trains switching back and forth. I knew my train was likely to be moved at any time. I did not leave the car on that account." He further testified that he had been engaged for years in the railway service in the capacity of station agent, telegraph operator and expressman.

This evidence is not sufficient to raise the issue that it was the duty of the plaintiff, in the exercise of proper care for his own safety, to leave the car. He had a right to remain in the car, and his reasons for doing so furnish an adequate excuse for his conduct. The danger which he ought to have anticipated as a result of his remaining in the car was that incident to a necessary and proper handling of the car, and the accident was not occasioned by his exposure to such risk, but by the careless and negligent handling of the car. He was not required to leave the car, where he had a right to be, in order to avoid injury from such source, and can not be charged with contributory negligence on that account.

The court instructed the jury, in substance, that if the fact that plaintiff was standing up in the car at the time he was injured contributed to the injury, and if an ordinarily prudent man would not have been standing up under such circumstances, then the plaintiff was not entitled to recover. Appellant, in its fourth and last assignment of error, contends that the evidence on this issue is such as to require a finding that the plaintiff was guilty of contributory negligence, and that the verdict of the jury is therefore contrary to the evidence. The plaintiff testified simply that he was standing up when the accident occurred. His son's testimony was of like character. No other witness testified on the subject. The parties do not appear to have attempted to develop the reasons for the plaintiff's conduct in this respect, though the evidence suggests the theory that he had gone or started to the car door to see what was being done with his car. Usually one traveling in such car would keep his seat, but if he does not, negligence on his part is not implied as a matter of law. Under the system prevailing in this State, the question whether an ordinarily prudent man would have been on his feet, in view of all the surroundings, must

be submitted to the jury, and the finding of the jury is conclusive of the question, unless the attendant circumstances are such that the finding is incompatible with sound reason and good judgment. We can not say that the verdict in this case was not warranted.

The judgment is affirmed.

*Affirmed.*

- Writ of error refused.